UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FILED
DEC 2 2 2005
CLERK'S OFFICE
U.S. DISTRICT COURT
EASTERN MICHIGAN

ROBERT RIVET,

       Plaintiff,

vs.

STATE FARM MUTUAL
AUTOMOBILE INSURANCE CO.,

       Defendant.
_____/

Civil Action No.
04-CV-72333-DT

HON. BERNARD A. FRIEDMAN

## OPINION AND ORDER DENYING DEFENDANT'S MOTIONS TO COMPEL PLAINTIFF TO SUBMIT TO A NEUROPSYCHOLOGICAL EXAMINATION AND FOR RULE 11 SANCTIONS

       This matter is presently before the court on defendant's amended motion to compel plaintiff to submit to a neuropsychological examination [docket entry 102], and on defendant's motion for Rule 11 sanctions [docket entry 113]. The issues have been fully briefed. Pursuant to E.D. Mich. LR 7.1(e)(2), the court shall decide both motions without oral argument.

       Plaintiff commenced this action against State Farm in Wayne County Circuit Court to enforce an alleged settlement agreement that resolved plaintiff's claim under Michigan's No-Fault Act for home attendant care and other expenses arising from an automobile accident in February 2000. According to the complaint, defendant entered into the settlement agreement in July 2003 but subsequently failed to abide by the terms of that agreement. The complaint asserts claims for breach of contract, benefits under the statute, and for negligent performance of contractual duties. Defendant removed the case in June 2004.

       In a letter to plaintiff's counsel dated July 27, 2005, defendant indicated that it had

scheduled an independent medical (neuropsychological) examination of plaintiff for August 15 and 16, 2005, with Linas A Bieliauskas, Ph.D. Plaintiff did not appear for this examination. In a letter to plaintiff's counsel dated September 14, 2005, defendant indicated that it had rescheduled the examination for October 3 and 4, 2005. Again, plaintiff did not appear for the examination.

Defendant now seeks an order compelling plaintiff to submit to this examination. For authority, defendant relies on (1) Michigan's no-fault act, M.C.L. § 500.3151, (2) plaintiff's policy of insurance, and (3) Fed. R. Civ. P. 35. Plaintiff opposes the motion.

Section 500.3151 states:

> When the mental or physical condition of a person is material to a claim that has been or may be made for past or future personal protection insurance benefits, the person shall submit to mental or physical examination by physicians. A personal protection insurer may include reasonable provisions in a personal protection insurance policy for mental and physical examination of persons claiming personal protection insurance benefits.

Plaintiff correctly notes that this statutory provision requires a person seeking personal protection insurance benefits to submit to an examination "by physicians." Plaintiff cites to two dictionaries which define physician as "a doctor of medicine." Defendant counters with various other dictionaries defining physician as, among other things, "a person skilled in the art of healing" or "a person who heals."

The court does not believe it is necessary or appropriate to engage in a battle of dictionary definitions. While the no-fault act does not define "physician," the term is defined by the Michigan Public Health Code as follows:

> (c) "Physician" means an individual licensed under this article to engage in the practice of medicine.

2

> (d) "Practice of medicine" means the diagnosis, treatment, prevention, cure, or relieving of a human disease, ailment, defect, complaint, or other physical or mental condition, by attendance, advice, device, diagnostic test, or other means, or offering, undertaking, attempting to do, or holding oneself out as able to do, any of these acts.

M.C.L. § 333.17001. In interpreting the terms of a Michigan statute, a definition supplied by the Michigan Legislature is superior to that of Webster's or American Heritage. Under the statutory definition, a "physician" is a person licensed by the State of Michigan to engage in the practice of medicine. Defendant, as the party seeking the court's intervention, has the burden of demonstrating its entitlement to the requested relief. So far, defendant has not shown that Linas A. Bieliauskas, Ph.D. is a physician as defined by the Michigan Public Health Code. Until it does so, plaintiff cannot be compelled to submit to this examination.

Defendant next cites to the section of the insurance policy entitled "insured's duties," which has a provision stating that a claimant "shall . . . be examined by physicians chosen and paid by us as often as we reasonably may require." Again, defendant has not demonstrated that Linas A. Bieliauskas, Ph.D. is a "physician."

Finally, defendant relies on Fed. R. Civ. P. 35, which authorizes the court to require a party "to submit to a physical or mental examination by a suitably licensed or certified examiner" if the party's "mental or physical condition . . . is in controversy." Unlike the statute and the insurance policy, Rule 35 does not require that the examination be performed by a physician. Nonetheless, the party seeking the order must show "good cause" for the examination. *Id.* And even if good cause is shown, whether or not the examination should be ordered is a matter left to the court's sound discretion. *See* 8A C. Wright & A. Miller, *Federal Practice and Procedure* § 2234.1

3

(1994 & 2005 Supp.) (collecting cases).

The court is not persuaded that defendant has demonstrated good cause. First, defendant has not shown that it needs the requested examination. The exhibits attached to defendant's reply brief show that plaintiff has already been examined on several occasions – and that defendant has copies of the reports of those examinations. Defendant's Exhibit 1 is an 8-page "neuropsychological evaluation" of plaintiff by Burton Zung, Ph.D., a clinical neuropsychologist who subjected plaintiff to an extensive battery of tests over four days in June and July 2000. Exhibits 2, 3, 4 and 5 are several pages of notes from plaintiff's treating physician, Bradford A. Anderson, M.D., dated August, September and October 2001. Exhibit 6 is an October 2004 report of Dr. Wayne T. Cornblath, M.D., who evaluated plaintiff's optic neuropathy and cataract. Exhibit 7 is a June 2005 report from Dr. Cornblath to State Farm, commenting on plaintiff's visual complaints. Exhibit 8 is a 3-page November 2004 report by Dr. James K Richardson, M.D., who performed a physical examination of plaintiff. Exhibit 9 is a 4-page May 2005 report by Sean Gargan, a clinical nurse specialist who performed a mental status examination of plaintiff. As defendant is already in possession of this wealth of information about plaintiff's physical and mental condition, it is unclear to the court why defendant believes plaintiff should be examined again.

Nor has defendant explained why, if it truly needed the requested examination, it waited until August 2005 to schedule it. As noted above, plaintiff was injured in February 2000, State Farm's claims representative purportedly settled his claim for benefits in July 2003, and the instant action was commenced in June 2004. Under this court's October 5, 2004, scheduling order, all discovery was to be completed by February 4, 2005. During this eight-month period, defendant never sought a Rule 35 examination. When defendant finally did schedule the August 2005

4

examination, and gave plaintiff notice at the end of July 2005, the discovery period had been closed for six months. When defendant rescheduled the examination for October 2005, and gave notice in mid-September 2005, the discovery period had been closed for eight months. Defendant does not explain why it is entitled to an order requiring plaintiff to submit to a Rule 35 examination after discovery has closed. Fortuitously for defendant, at the end of September 2005 – *after* defendant scheduled the most recent examination – the discovery period was reopened for several months due to the filing of defendant's massive counterclaims. However, this does not explain or excuse defendant's scheduling of the examination at a time when discovery was closed.

Finally, defendant has failed to demonstrate to the court's satisfaction that plaintiff's mental condition is "in controversy," as required by Rule 35. The principal thrust of plaintiff's complaint is that defendant has breached a settlement agreement that resolved his claim for personal protection insurance benefits, and the principal thrust of defendant's counterclaims is that the settlement agreement is void due to collusion between plaintiff's attorney (Silverman) and defendant's claims representative (Swagler). It appears that it is *the settlement agreement, not plaintiff's mental condition*, which is "in controversy." If defendant succeeds in establishing that the settlement agreement is the product of fraud, then the agreement will be unenforceable. If defendant fails to make this showing, the agreement will be enforced. It is the alleged fraud of Silverman and Swagler that is in controversy, not plaintiff's mental condition.

In sum, defendant has failed to show its entitlement to relief under Rule 35. Defendant has not shown that plaintiff's mental condition is in controversy; defendant has not shown that it needs the requested examination; and defendant has not explained why it scheduled the examination long after the February 2005 discovery cutoff date.

Defendant's motion for sanctions is denied because defendant has not shown that it complied with the 21-day "safe harbor" provision of Fed. R. Civ. P. 11(c)(1)(A). *See First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 510-511 (6th Cir. 2002); *Ridder v. City of Springfield*, 109 F.3d 288, 297 (6th Cir.1997). Accordingly,

IT IS ORDERED that defendant's amended motion to compel plaintiff Rivet to submit to a neuropsychological examination [docket entry 102] is denied.

IT IS FURTHER ORDERED that defendant's motion for Rule 11 sanctions [docket entry 113] is denied.

Dated: Dec. 22, 2005
Detroit, Michigan

BERNARD A. FRIEDMAN
CHIEF UNITED STATES DISTRICT JUDGE

I hereby certify that a copy of the foregoing document was served this date upon counsel of record electronically and/or via first-class mail.

Patricia Foster Hommel
Secretary to Chief Judge Friedman